DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHARMARKCO DONTRAYVIOUS EVANS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-2867

[April 8, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael Carlton Heisey, Judge; L.T. Case No. 562023CF000167AXXXXX.

Daniel Eisinger, Public Defender, and Erika Elizabeth Follmer, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Pablo Ignacio Tapia, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Sharmarkco Evans appeals from his conviction and sentence for violating section 790.23(1), Florida Statutes (2022) ("Felon in Possession of Firearm"). On appeal, Appellant challenges: (I) the trial court's denial of his motion for judgment of acquittal; (II) the sufficiency of the trial court's colloquy regarding his stipulation to prior convicted-felon status; (III) the facial constitutionality of section 790.23(1) under the Florida Constitution; (IV) the facial constitutionality of section 790.23(1) under the United States Constitution; (V) the size of the jury; (VI) the trial court's imposition of a three-year mandatory minimum sentence; and (VII) the trial court's imposition of a $50 investigative cost.

We affirm on issue II without discussion.

We affirm on issue III. *See Nelson v. State*, 195 So. 2d 853 (Fla. 1967); *Simpson v. State*, 368 So. 3d 513, 520–24 (Fla. 5th DCA 2023) (Pratt, J., concurring) (explaining why *Nelson* still governs the *state* constitutional issue).

We affirm on issue IV. *See Paul v. State*, 381 So. 3d 617 (Fla. 4th DCA 2024); *Fleming v. State*, 414 So. 3d 175 (Fla. 4th DCA 2025); *Edenfield v. State*, 379 So. 3d 5, 9–10 (Fla. 1st DCA 2023), *reh'g denied*, 375 So. 3d 930 (Fla. 1st DCA 2023), *rev. denied*, No. SC2023-1106, 2023 WL 8710101 (Fla. Dec. 18, 2023).

We affirm on issue V. *See Guzman v. State*, 350 So. 3d 72, 73 (Fla. 4th DCA 2022), *rev. denied*, No. SC2022-1597, 2023 WL 3830251 (Fla. June 6, 2023), *cert. denied*, 144 S. Ct. 2595 (2024).

For the reasons that follow, we affirm on issue I but reverse on issues VI and VII.

## Background

Appellant has a twin brother named Charmarkco Evans. A detective was driving when he heard approximately ten gunshots from what sounded like multiple types of guns. He reported this on his police radio and drove toward the gunshots. He saw a man on a white bicycle at an intersection wearing a gray hooded sweatshirt and black pants, whom he recognized to be either Appellant or Appellant's twin. The man pointed and told the detective, "my homeboy got shot." The detective immediately left and found a teenager who had been shot on the street. With the injured teenager was "the other twin," wearing a black T-shirt and black pants with a white design on one of the pant legs. The injured teenager had been riding a green bike.

The detective watched footage from a surveillance camera overlooking a nearby intersection, which was entered into evidence. Around the 14:00 mark, a car passed the intersection and a person (the teenager) fell down. The video then showed a man on the sidewalk dismount from a white bicycle and point what appears to be a gun at the fleeing car, at which point brief flashes of light emerged from the apparent gun, consistent with gunfire. As the gun fired, the man stood near a group of bushes with his back to the street. The man then remounted the white bicycle and rode toward the surveillance camera, revealing a dark gray hoodie. The detective testified this was the same biker whom he had encountered moments later.

The detective's identification of Appellant at trial was inconsistent. The detective first testified that the biker was "one of two twins, Sharmarkco or Charmarkco Evans." When the detective was asked whether he could identify the biker in the courtroom, he pointed to Appellant at the defense

table, describing his white shirt and saying, "he looks exactly like the person that was on the bike. Like he's a twin." Later, he clarified that the biker was "Sharmarkco Evans." Asked to explain the inconsistency, the detective said, "[h]e was later identified as Sharmarkco Evans."

A crime scene investigator testified that three different types of bullet casings were found at the scene. She testified no fingerprints or DNA were found on the casings and she could not trace any specific round to a particular person. However, her description of the location where she found the lone .380 caliber shell is consistent with the bushes where the shooter was standing when he fired his gun at 14:16 of the video.

A police sergeant testified that he watched the surveillance video and determined that the man on the white bike with the gray sweater "produced a firearm and fired." The sergeant testified that he interviewed Appellant two weeks after the shooting. The sergeant testified that Appellant identified himself as "Don," and that he understood "Don" to be Sharmarkco Dontrayvious Evans. This interview was played for the jury. In the interview, "Don" says: "When we get to the edge of the road that's where they were shooting. And I'm coming on the bike. So that's when my brother start running -- right to that road, the police jumped out on me right there . . . ."

On cross-examination, defense counsel functionally conceded that Appellant was the person whom the sergeant had interviewed by asking questions including: "Your interview with Sharmarkco Evans didn't take place until the twenty-ninth?"; "[when you responded to interview Sharmarkco, we just saw it on body cam . . . he was forthcoming?"; and "he reported the gun fire, seeing fire and that his homeboy was in the street . . . ?" The sergeant answered all these questions in the affirmative. Defense counsel further asked, "[t]he only person that you specifically interviewed in -- in this case was my client on the twenty-ninth then, is that fair to say?" The sergeant said he also interviewed "the victim" and then agreed, "[y]es, sir." On redirect, when asked if he saw the person whom he had interviewed on the twenty-ninth in the room, the sergeant pointed to Appellant at the defense table and described his shirt.

After the State rested its case, Appellant moved for a judgment of acquittal. His counsel argued: "[T]he state has not proven a prima facie case or put on evidence to support a prima facie case for [felon in] possession of a firearm specifically as to element two. We stipulated in this trial to element one of that charge, being a convicted felon. However, in the testimony presented not a single witness was able to positively ID my client, Sharmarkco Evans, as the shooter . . . ."

3

The trial court denied the motion, finding that the testimony by the detective, the sergeant, and the crime scene investigator, together with the bullet in the bushes, the surveillance video, and the interview, added up to "enough evidence for the jury to make the determination as to who is depicted . . . on the video firing a gun."

The jury convicted Appellant of possession of firearm or ammunition by a convicted felon. On a special interrogatory asking whether the possession was of a firearm or ammunition, the jury checked both boxes. The trial court sentenced Appellant to eight years incarceration with a three-year mandatory minimum under section 775.087(2)(a)1., Florida Statutes (2022), over Appellant's objection to the mandatory minimum. The trial court also imposed a $50 cost of investigation.

Appellant challenged the mandatory minimum and the cost of investigation by a Florida Rule of Criminal Procedure 3.800(b)(2) motion. The trial court did not rule on the motion within sixty days, and thus the motion was deemed denied by operation of law. This appeal follows.

## Analysis

### *The evidence was sufficient to sustain Appellant's conviction.*

"A de novo standard of review applies when reviewing a motion for judgment of acquittal." *Santisteban v. State*, 72 So. 3d 187, 194 (Fla. 4th DCA 2011). "In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the state that may be reasonably inferred from the evidence." *Id.* "A court should grant a motion for judgment of acquittal only if 'the evidence is such that no view which the jury may lawfully take of it favorable to the [State] can be sustained under the law.'" *Id.* at 194–95 (quoting *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974)).

Here, the trial court did not err in denying Appellant's motion for judgment of acquittal. While Appellant's twin's proximity to the crime scene created some confusion and inconsistency in the identification testimony, sufficient evidence existed for the jury to find beyond a reasonable doubt that Appellant possessed the gun. The detective testified that Appellant had approached him on a white bike and, after watching the surveillance video, the detective determined the shooter was the biker whom he had encountered. While the detective's identification was initially equivocal, he later testified the biker was Appellant. The man interviewed by the sergeant stated that he was "coming on the bike" and

"the police jumped out on [him] right there" on the road, corroborating the detective's testimony about the encounter. The sergeant testified that the man whom he had interviewed was Appellant. Defense counsel's cross-examination questions conceded that Appellant was the interviewee. The evidence was sufficient for a jury to find that the shooter, the biker, and the interviewee were the same person and that Appellant was that person. Accordingly, we affirm on issue I.

### *The trial court erred in imposing a mandatory minimum sentence and a cost of investigation.*

"The standard of review applicable to a trial court's order on a motion to correct sentencing error is de novo." *Pitts v. State*, 202 So. 3d 882, 884 (Fla. 4th DCA 2016). As we have repeatedly explained, in order for the three-year mandatory minimum sentence under Florida Statutes section 775.087(2)(a)1. to be imposed for possession of a firearm by a convicted felon, the jury must make an *express finding* of *actual* possession. *Rock v. State*, 392 So. 3d 791, 792 (Fla. 4th DCA 2024); *State v. Collazo*, 93 So. 3d 417, 418 (Fla. 4th DCA 2012); *Banks v. State*, 949 So. 2d 353, 355 (Fla. 4th DCA 2007).

Here, the jury did not make an express finding of actual possession. The jury instructions included both actual and constructive theories of possession. But the special interrogatory only asked the jury to specify whether the possession was of a *firearm* or *ammunition*, not whether the possession was actual or constructive. Thus, we reverse on issue VI and remand for the trial court to strike Appellant's mandatory minimum sentence.

We review imposition of costs pursuant to statutes de novo. *See Richards v. State*, 288 So. 3d 574, 575 (Fla. 2020). "Trial courts cannot impose investigative costs 'where the record does not demonstrate that the State requested reimbursements for these costs.' If these costs are not requested by the State, they must be stricken and cannot be imposed on remand." *Desrosiers v. State*, 286 So. 3d 297, 300 (Fla. 4th DCA 2019) (quoting *Chambers v. State*, 217 So. 3d 210, 214 (Fla. 4th DCA 2017)).

Here, the State properly concedes that the investigative costs must be stricken because the State did not request those costs. We reverse on issue VII and remand for the trial court to strike the $50 cost of investigation.

5

## Conclusion

As discussed above, we affirm on issues I–V and affirm Appellant's conviction; we reverse on issues VI and VII and remand for the trial court to strike the three-year mandatory minimum and the $50 cost of investigation from Appellant's sentence.

*Affirmed in part; reversed and remanded in part with instructions.*

KLINGENSMITH and SHEPHERD, JJ., concur.

\*         \*         \*

***Not final until disposition of timely-filed motion for rehearing.***